Rent for November and December, 1900, and January, 1901, was paid by the appellant to the respondent. On February 1, 1901, the respondent demanded possession of the premises from the appellant, and, upon the latter's refusal to comply, this proceeding to dispossess was begun. Under the circumstances above disclosed, the general principle that a tenant is estopped from denying his landlord's title controls the case. It is true that the appellant did not obtain possession from the landlord, but that circumstance does not affect the operation of the rule. In 18 Am. & Eng. Enc. Law (2d Ed.) p. 415, it is said:

"If a person already in possession of land takes a lease of it from a third person, or recognizes such third person as his landlord, the general rule is that he is afterwards estopped to deny such third person's title."

In Prevot v. Lawrence, 51 N. Y. 222, the court said:

"And it can make no difference that the tenant did not obtain the possession of the plaintiff. She was in possession, and, by virtue of the letting, remained in possession during the term. In Hall v. Butler, 10 Adol. & E. 204, N., having no title to certain premises, let them by parol, and the tenant went into possession and paid some rent. Afterwards another claimant, B., demanded the rent, and N., being satisfied with B.'s title, informed his tenant, in B.'s presence, that he had given up the premises to B., who was now the landlord, and that thenceforth the rent was to be paid to B. The tenant acquiesced, and paid B. part of the rent. It was held that this tenant could not dispute B.'s title. In Marlow v. Wiggins, 4 Adol. & E. (N. S.) 367, after the tenant had taken possession, and before the expiration of the term, the landlord died. Then the devisee of the landlord let the same premises to the tenant, and it was held, in ejectment against the tenant by the devisee, that he could not offer evidence that the devise was void, and that he was estopped from disputing the title of the devisee."

In Whalin v. White, 25 N. Y. 462, it was held that a tenant, by holding under, and paying rent to, successive assignees of the owner, is estopped from denying that they are assignees of his original lessor.

Holding the view we do on this point, it becomes unnecessary to consider any of the other grounds urged on the appeal. It results from the views above expressed that the final order should be affirmed, with costs.

Final order affirmed, with costs. All concur.

---

(37 Misc. Rep. 556.)

RAPID SAFETY FIRE EXTINGUISHER CO. v. HAY–BUDDEN MFG. CO.

(Supreme Court, Appellate Term. March, 1902.)

LEASE OF PERSONALTY—DESTRUCTION BY FIRE—LIABILITY OF LESSEE.
    Defendant leased certain fire extinguishers under an agreement that, if any damage were done, then it would pay the lessor "the value of the property so damaged or destroyed." *Held*, that the lessee was liable where they were destroyed by fire, though the fire did not result from its negligence.
    Greenbaum, J., dissenting.

Appeal from municipal court, borough of Manhattan.

Action by the Rapid Safety Fire Extinguisher Company against the Hay-Budden Manufacturing Company. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and GIEGERICH and GREENBAUM, JJ.

Foley & Powell, for appellant.

Oppenheim & Severance, for respondent.

GIEGERICH, J.  The plaintiff leased to the defendant 10 fire extinguishers by a written contract, one clause of which is as follows: "If damage be done to the company's property, the subscriber shall pay to the company the value of the property so damaged or destroyed, or the cost of repairing the same." The extinguishers were destroyed by a fire which occurred on the defendant's premises, and in this action the plaintiff has recovered a judgment for their value.

The defendant urges as the chief ground of its appeal that the plaintiff was not entitled to recover without some proof of its negligence or default.  In support of this argument the appellant cites Story, Bailm. §§ 408, 410; Harrington v. Snyder, 3 Barb. 383; Stewart v. Stone, 127 N. Y. 500, 28 N. E. 595, 14 L. R. A. 215; Claflin v. Meyer, 75 N. Y. 260, 31 Am. Rep. 467; and other authorities,—all to the effect that the burden is on the bailor of showing negligence on the part of the bailee before he can recover against the latter for the loss of the goods bailed.  The appellant insists that the same rule applies here.  This argument loses sight, however, of the familiar principle of construction of contracts that meaning must be given to every part.  If the contract in question had been silent on the point of liability for damage or destruction of the bailed goods, then the rule cited by the appellant would apply.  If effect be given, as must be done, to the language of the parties, this case has been made an exception to the rule, and the bailee has been made liable for damage or destruction, even though not caused by his fault. The appellant relies upon Coldwell-Wilcox Co. v. Sullivan, 3 App. Div. 359, 38 N. Y. Supp. 290, where the defendant agreed to return patterns after they had been used for making castings, and Young v. Leary, 135 N. Y. 569, 32 N. E. 607, where the defendant chartered a vessel, and agreed to return the same to the plaintiffs in New York harbor, upon the termination of the charter.  In both cases the property was destroyed by fire, and it was held that no recovery could be had against the defendants without proof of negligence on their part.  The theory on which the latter case was decided, however, viz., that there was an implied condition of a continued existence of the goods which were to be delivered, so that if delivery became impossible the bailee was excused, makes very clear the distinction between those two cases, and cases like them, and the case at bar.  Here, there is no implied condition of the continued existence of the property, but there is an express provision as to liability in the event of its destruction.  The contract is not contrary to public policy; it is not even unreasonable or unfair.  There are many reasons why the party who had the custody of the bailed goods, and the control of the premises on which they are kept, should be liable for loss in a case where no fault is proved against any one, rather than that such liability should be placed upon the party who had no control of the goods, and does not even have equal advantages for as-

certaining all the facts relating to their destruction. At any rate, in this case the minds of the parties specifically met, in a lawful contract, upon the very event that has occurred, viz., the destruction of the property in question, and we see no reason why the agreement should not be enforced.

The judgment should be affirmed with costs.

FREEDMAN, P. J. (concurring). It may be conceded that, as a general rule, under the ordinary obligation of a bailee to return the article hired, he is not liable for failure to return, if before the time arrived the article was destroyed without his fault, and that this is only another way of saying that an obligation expressed in such language carries with it an implied condition that the article to be returned shall be in existence at the time when the obligation to return arises. Young v. Leary, 135 N. Y. 578, 32 N. E. 607. But the parties may, by express contract, vary the rule. In the case at bar the contract expressly provides for liability in case of destruction. The word "destroyed" is used without limitation, and hence it is difficult to see why destruction by fire should constitute an exception. True, either party might have insured against loss by fire. But when it is considered that it was the business of the plaintiff to hire out fire extinguishers to a large number of persons in different localities, and in each instance would have had to effect separate insurance unless protection against loss by fire could be secured by some special provision in the contract of bailment, it seems but reasonable to conclude that the contract in this case contemplated to cast the burden of loss, in case of destruction by fire, upon the bailee. The case of Coldwell-Wilcox Co. v. Sullivan, 3 App. Div. 359, 38 N. Y. Supp. 290, does not help the defendant here, because the defendant in that case was sought to be held liable upon a special agreement to insure the property, but which agreement the referee found was never made, and which finding the appellate division refused to disturb on conflicting evidence.

I concur in the views expressed by Mr. Justice GIEGERICH, and in the conclusion that the judgment should be affirmed, with costs.

GREENBAUM, J. (dissenting). The plaintiff corporation leased to the defendant 10 fire extinguishers upon an agreed rental, to be paid at stated times. The alleged agreement is in the nature of a request, upon a printed form prepared by the plaintiff, signed by defendant and addressed to the plaintiff, requesting the latter to place in defendant's premises the fire extinguishers, for which defendant agrees to pay a stipulated sum semiannually in advance, and to "hereby lease same for a period of five years from this date, subject to the conditions indorsed upon the back hereof, which are hereby made a part of this contract." On the back of the order there are nine enumerated conditions, some of them providing for inspection on the part of plaintiff, and exemption of plaintiff from liability in case the extinguishers are out of order and fail to operate, or in case of any damage resulting therefrom. Subdivision 6 reads as follows: "If damage be done to company's property, the subscriber shall pay to the

company the value of the property so damaged or destroyed, or the cost of repairing the same." It does not appear that the plaintiff signed the agreement, and all the "conditions" appear to be for the benefit and advantage of the plaintiff. A fire occurred after business hours upon defendant's premises, and, so far as the record discloses, without negligence on its part, and destroyed the fire extinguishers. In an action brought by the plaintiff upon the foregoing state of facts for the value of these fire extinguishers, judgment was rendered against the defendant. The defendant was a bailee for hire, and, the bailment being reciprocally beneficial to both parties, the bailee, in the absence of a special agreement to the contrary, would be required to exercise only ordinarily diligence and would be answerable for only ordinary neglect. It is also well settled that a bailee, "in the absence of a special agreement, is not an insurer of the chattel intrusted to his care, and is not responsible for losses resulting from dangers necessarily incident to its use nor from inevitable accident or irresistible force." 3 Am. & Eng. Enc. Law (2d Ed.) 746, 747. While it is undoubtedly true that the parties may by express agreement enlarge the liability of the bailee, yet it is equally true that the courts will not interpret the contract unfavorably to the bailee, beyond the obvious scope of its terms. Ames v. Belden, 17 Barb. 513. The case last cited quotes with approval from Story on Bailments that a covenant to insure "does not appertain to contracts of bailment, and, if superadded, it should only be by clear and explicit agreement." It must therefore be conceded that, unless the defendant became an insurer under the sixth "condition" printed on the back of the order, the judgment should not stand. It is a well-recognized doctrine in the law of bailments that the liability of the bailee shall be predicated upon the property being in existence, so that, if delivery became impossible, the bailee is excused. Young v. Leary, 135 N. Y. 569, 32 N. E. 607; American Preservers' Co. v. Drescher, 4 Misc. Rep. 482, 24 N. Y. Supp. 361.

It now becomes necessary to interpret the meaning of the language employed in the sixth "condition." In so doing, it may aid us to recall such rules of interpretation as may be applicable here. In case of contracts the courts have applied the rule of construction most strongly against the party using the words. Paul v. Travelers' Ins. Co., 112 N. Y. 479, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758. Another rule of construction that is of value here is that the terms of the contract "be construed in the light of all the surrounding circumstances under which they were used, and necessarily affecting their signification, in order more perfectly to understand the intent and meaning of the parties." Pitney v. Insurance Co., 61 Barb. 340. Bearing in mind the principles of law referred to, we are led to inquire into the meaning of the words used in the sixth "condition." Did not the plaintiff really intend to hold defendant liable for acts of damage only, against which plaintiff could not guard, and which the defendant, as the controller of the premises where the fire extinguishers were to be placed, might prevent? It might well be that the plaintiff intended to make the defendant liable for more than ordinary negligence. But the crucial inquiry is, did the parties intend that the defendant shall be liable for injury or destruction of the apparatus while on these prem-

ises, no matter how carefully the defendant conducted himself respecting it? In other words, was the defendant an unqualified insurer of the chattels? The clause reads: "If damage be done to company's property," etc. Does not this imply, if damage be done through the negligence of defendant or his servants? No special significance need be given the word "destroy," in this connection, because, if defendant was an insurer, he was liable to plaintiff for any damage done to the articles. The word "destroyed" was evidently merely intended as an amplification of the word "damaged," and should be construed in conjunction with the preceding words. Construing the language of the instrument in its popular sense, did not plaintiff mean, when it said "if damage be done to the company's property," damage done by defendant or his agents? Was it contemplated to include a case of damage by fire, not occasioned by defendant or its agents? Was it not intended to cover the case of damage to the property against which the plaintiff could not protect itself? Plaintiff could certainly have insured the extinguishers. The law will not hold the defendant liable as an insurer, unless this intention is explicitly expressed in the contract. There is also an implied condition of the continued existence of the thing bailed. If it was intended to overcome these rules of law, the contract could have expressly stated that the defendant is liable for loss by fire, or some other comprehensive language might have been employed to make the bailee liable for any injury that may occur to the property, no matter how occasioned. The articles in question were intended to be used to extinguish fire. Is it likely that it was contemplated between the parties that if the extinguishers of fire were themselves to be extinguished by a fire, without any carelessness on the part of defendant, the latter was to be responsible for their value? I do not think that this was the intention of the parties, nor that the language used can be fairly said to express such intention, bearing in mind that to make the defendant, as bailee, an insurer, the language must be clear and certain.

The judgment should be reversed, and a new trial ordered.